No. 22-35449

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

FAYSAL A. JAMA, on behalf of himself and all others similarly situated;
JAMES KELLEY; ANYSA NGETHPHARAT,

Plaintiffs-Appellants,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY;
STATE FARM FIRE AND CASUALTY COMPANY,

Defendants-Appellees.

On Appeal from the United States District Court for the
Western District of Washington, Nos. 2:20-cv-00454-MJP, 2:20-cv-00652-MJP
Hon. Marsha J. Pechman

**BRIEF OF THE CHAMBER OF COMMERCE
OF THE UNITED STATES OF AMERICA AND THE
AMERICAN PROPERTY CASUALTY INSURANCE ASSOCIATION
AS *AMICI CURIAE* IN SUPPORT OF
PETITION FOR REHEARING EN BANC**

Jennifer B. Dickey
Jonathan D. Urick
U.S. CHAMBER LITIGATION CENTER
1615 H Street, NW
Washington, DC 20062

Stephen Skardon
AMERICAN PROPERTY CASUALTY
 INSURANCE ASSOCIATION
8700 West Bryn Mawr, Suite 1200S
Chicago, IL 60631

Adam G. Unikowsky
JENNER & BLOCK LLP
1099 New York Ave. NW Suite 900
Washington, DC 20001
(202) 639-6000
aunikowsky@jenner.com

## CORPORATE DISCLOSURE STATEMENT

*Amici curiae* certify that they have no outstanding shares or debt securities in the hands of the public, and they do not have a parent company.  No publicly held company has a 10% or greater ownership interest in *amici curiae.*

    /s/ Adam G. Unikowsky

**TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF AUTHORITIES ...................................................................... iii

STATEMENT REGARDING CONSENT..............................................1

IDENTITY AND INTEREST OF *AMICI* .................................................1

SUMMARY OF ARGUMENT .................................................3

ARGUMENT ...................................................................................4

I.    The Panel Opinion Is Wrong and Departs from Circuit Precedent.................4

    A.    The proposed class violates Federal Rule of Civil Procedure 23. ........4

    B.    The panel erred in departing from *Lara*..............................................10

II.    Rehearing En Banc is Warranted....................................................13

CONCLUSION ..................................................................17

# TABLE OF AUTHORITIES

**CASES**

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) ......................................17

*Bourque v. State Farm Mutual Automobile Insurance Co.*, 89 F.4th 525 (5th Cir. 2023) ..............................................................................................14

*Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023) ................................................ 16-17

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) ............................................4, 5, 12

*Coopers & Lybrand v. Livesay*, 437 U.S. 463 (1978), *superseded by rule as stated*, *Microsoft Corp. v. Baker*, 582 U.S. 23 (2017)............................16

*Creative Montessori Learning Centers v. Ashford Gear LLC*, 662 F.3d 913 (7th Cir. 2011) .........................................................................................16

*Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258 (2014) .........................5

*Lara v. First National Insurance Co.*, 25 F.4th 1134 (9th Cir. 2022) .....3, 4, 7, 9, 10

*Lewis v. Government Employees Insurance Co.*, 98 F.4th 452 (3d Cir. 2024) ................................................................................................................14

*Sampson v. United Services Automobile Ass'n*, 83 F.4th 414 (5th Cir. 2023) ..............................................................................................................3, 13

*Stoneridge Investment Partners, LLC v. Scientific–Atlanta, Inc.*, 552 U.S. 148 (2008).............................................................................................16

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016) .......................................8, 9

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)...........................................7-8

**STATUTES**

Wash. Rev. Code § 19.86.090.....................................................................................7

**OTHER AUTHORITIES**

Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical Legal Stud. 811 (2010)...........................17

iii

Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97 (2009) ....................................................................16

Wash. Admin. Code § 284-30-320(1) .........................................................5

Wash. Admin. Code § 284-30-391(4)(b)......................................................6

## STATEMENT REGARDING CONSENT

All parties consent to the filing of this *amicus* brief.[1]

## IDENTITY AND INTEREST OF *AMICI*

The Chamber of Commerce of the United States of America (the "Chamber") is the world's largest business federation. It represents approximately 300,000 direct members and indirectly represents the interests of more than 3 million companies and professional organizations of every size, in every industry sector, and from every region of the country. An important function of the Chamber is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts. To that end, the Chamber regularly files *amicus curiae* briefs in cases, like this one, that raise issues of concern to the nation's business community, including cases involving class actions.

The American Property Casualty Insurance Association ("APCIA") is the primary national trade association for home, auto, and business insurers. APCIA promotes and protects the viability of private competition for the benefit of consumers and insurers, with a legacy dating back 150 years. APCIA's member companies represent 65% of both the overall U.S. property-casualty insurance

---

[1] Pursuant to Fed. R. App. P. 29(a)(4)(E), *amici curiae* state that no party's counsel authored this brief in whole or in part and that no person or entity other than the *amici curiae*, their members, or their counsel contributed money that was intended to fund preparing or submitting the brief.

1

market and over 64% of Arizona's personal automobile insurance market. On issues of importance to the insurance industry and marketplace, APCIA advocates sound public policies on behalf of its members and their policyholders in legislative and regulatory forums at the federal and state levels and submits *amicus curiae* briefs in significant cases before federal and state courts.

*Amici* have an interest in this case because the panel's decision improperly loosens the requirements to obtain class certification. State Farm's insurance contracts require it to pay the "actual cash value" (ACV) of its insureds' totaled cars. Plaintiffs contend that one component of State Farm's ACV valuation—its application of a "typical negotiation adjustment"—is inaccurate. But as the District Court correctly concluded, that contention cannot serve as the basis for a class action because its resolution would not be a sufficient basis to decide State Farm's liability to *any*—let alone *every*—class member. Op. 12.

This Court reversed the District Court, holding that damages could be determined on a class-wide basis based on the following theory: "class members could measure their injuries on a class-wide basis by adding back to the value of their vehicles ... the amount of the unlawful negotiation discount." Op. 19. That holding was wrong. Class members have a contractual entitlement to ACV—not the amount of the allegedly unlawful negotiation discount. A district court lacks authority to certify a class based on a manifestly incorrect legal premise.

2

The Court should grant rehearing en banc. As Judge Rawlinson's dissent explains, the panel opinion is irreconcilable with *Lara v. First National Insurance Co.*, 25 F.4th 1134 (9th Cir. 2022), and *Sampson v. United Services Automobile Ass'n*, 83 F.4th 414 (5th Cir. 2023). Further, by adopting an overly loose approach to Rule 23, the panel's holding will negatively affect class action litigation in this Circuit. The Chamber, APCIA, and their members have a strong interest in ensuring that courts comply with Rule 23's rigorous standards.

## SUMMARY OF ARGUMENT

The Court should grant rehearing en banc. The panel decision is wrong and creates intra- and inter-circuit conflicts of authority.

Plaintiffs claim that State Farm failed to pay the actual cash value (ACV) of class members' totaled cars. Their theory is that the negotiation adjustment—which is one type of adjustment that State Farm folds into its valuation analysis—violates a Washington regulation. But that showing, even if it could be made, would not establish State Farm's liability to any—much less every—class member. There is no private cause of action to enforce the regulation that State Farm allegedly violated. Thus, to obtain damages, Plaintiffs would still have to prove, for each class member, that the negotiation adjustment produced a valuation below ACV. Because that inquiry will require individualized fact-finding, class certification was unwarranted.

3

In reaching a contrary conclusion, the panel reasoned that the District Court could determine damages for each class member by awarding an amount equal to the negotiation adjustment. That theory lacks merit because the insurance contracts do not contain any promise to pay the amount of the negotiation adjustment. Instead, they contain a promise to pay ACV. The panel erred in holding that a class should be certified based on a manifestly faulty legal theory.

The Court should rehear this case en banc. As Judge Rawlinson's dissent explains, the panel opinion creates intra- and inter-circuit conflicts. Further, the panel opinion implies that a plaintiff can obtain class certification merely by postulating a legal theory that would permit classwide damages calculations, even if that theory is wrong. This holding would create a gaping loophole in Rule 23.

## ARGUMENT

## I.  The Panel Opinion Is Wrong and Departs from Circuit Precedent.

The District Court faithfully followed *Lara v. First National Insurance Co.*, 25 F.4th 1134 (9th Cir. 2022), and correctly held that a class could not be certified based on the allegedly unlawful nature of the negotiation adjustment. As Judge Rawlinson's dissent explained, the panel's decision is irreconcilable with *Lara*.

### A.  The proposed class violates Federal Rule of Civil Procedure 23.

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Comcast Corp. v. Behrend*,

569 U.S. 27, 33-34 (2013) (citation omitted). "[P]laintiffs wishing to proceed through a[n opt-out] class action must actually *prove*—not simply plead—that their proposed class satisfies each requirement" of Rule 23(b)(3)—commonality, predominance, and superiority. *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014). "[C]ertification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of [Rule 23] have been satisfied." *Comcast*, 569 U.S. at 33 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011) (internal quotation marks omitted)).

In this case, Plaintiffs have not proven that any common question exists, much less predominates over individualized questions. Plaintiffs seek to certify a class of State Farm's insureds who purchased insurance contracts that promise to pay actual cash value (ACV) of totaled automobiles. 3-ER-378; 4-ER-802 ¶ 4. Under Washington law, "[a]ctual cash value" means "fair market value." Wash. Admin. Code § 284-30-320(1).

State Farm calculates ACV using software called Autosource. When determining ACV, Autosource applies a "negotiation adjustment," which "assumes that the typical customer negotiates with the dealer and buys a car for less than the advertised price and is designed to capture that price difference." Op. 7.

Plaintiffs argue that the negotiation adjustment is unlawful. They rely on a Washington regulation stating that when settling a total loss vehicle claim, the

5

insurer must "[b]ase all offers on itemized and verifiable dollar amounts for vehicles that are currently available, or were available within ninety days of the date of loss, using appropriate deductions or additions for options, mileage or condition when determining comparability." Wash. Admin. Code § 284-30-391(4)(b). According to Plaintiffs, this provision prohibited State Farm from applying the negotiation adjustment.

But as the District Court correctly explained, Plaintiffs put forth no evidence that *any*—much less *every*—class member was paid less than ACV. Indeed, Plaintiffs "never intended to show that they received less than the ACV." 1-ER-9. Instead, Plaintiffs contend that "they 'are not so much alleging that State Farm breached its contract by failing to pay the actual cash value of vehicles deemed a total loss but alleging that State Farm engaged in an improper valuation process by deducting unlawful amounts from what was otherwise (as determined by State Farm) the actual cash value.'" *Id.* (quoting Pls. Opp. to Defs.' Mot. Summ. J. at 9).

That theory contains a fundamental flaw. Plaintiffs bring a breach of contract action. The insurance contract entitles Plaintiffs to ACV. It does not contain an independent promise to refrain from making negotiation adjustments as part of State Farm's process of determining ACV under the contract.

Plaintiffs contend that Washington's regulations require insurers to refrain from making negotiation adjustments. But Plaintiffs cannot hinge their entitlement

to relief on State Farm's alleged violation of a regulation. "[O]nly the Washington insurance commissioner can prosecute violations of the regulation." *Lara*, 25 F.4th at 1139. Instead, Plaintiffs must establish a breach of the contractual obligation to pay ACV. And a "violation of the regulation isn't a breach." *Id.*

Plaintiffs also bring a claim under the Washington Consumer Protection Act. That claim rises or falls with the breach of contract claim. The statute requires proof that a plaintiff be "injured in his ... business or property." Wash. Rev. Code § 19.86.090. Here, the asserted "injury" is the failure to receive the funds to which Plaintiffs were legally entitled under their insurance contracts. Thus, Plaintiffs' consumer protection claim hinges on their theory that State Farm breached the contracts. If State Farm's alleged regulatory violation is not a breach, it is not a violation of the Washington Consumer Protection Act, either. *See Lara*, 25 F.4th at 1138-39.

Because Plaintiffs must show a breach as to each class member, no class should have been certified. Plaintiffs cannot show that a common question exists at all, and they certainly cannot show that a common question predominates over individualized questions. As the Supreme Court has explained, commonality also requires not just "the raising of common questions—even in droves—but rather, the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51

7

(2011) (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009) (internal quotation marks omitted)). Here, "whether the negotiation adjustment complies with Washington law" is not a common question under Rule 23 because no common answer to that question could drive the resolution of the litigation. Suppose Plaintiffs establish that Washington law prohibits negotiation adjustments. That finding would still not drive the resolution of the litigation with respect to *any* putative class member, because that finding would not answer the question that matters: did State Farm breach the contract by paying less than ACV? For every class member, the determination of whether State Farm breached the contract would still require an individualized analysis of whether the amount of money the class member received is lower than ACV. Plaintiffs therefore cannot show any common questions in the sense relevant to Rule 23.

But even if Plaintiffs could show commonality, they could not prove predominance, as Rule 23 requires. "The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (internal quotation marks omitted). "The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important

than the non-common, aggregation-defeating, individual issues." *Id.* (internal quotation marks omitted).

Here, individualized issues predominate for a straightforward reason: it is *inevitable* that there will be individual liability trials with respect to *every single* class member. As already explained, even if Plaintiffs were to prove, following class certification, that negotiation adjustments violate Washington law, that fact would say nothing about whether State Farm is liable to any particular class member. For every single class member, the court would still have to ask the question: was the payment *in fact* lower than ACV? That question would depend on individualized evidence regarding the characteristics of the class member's particular car. Individualized questions predominate because the court would need to review particularized evidence with respect to every putative class member before determining whether any of them were entitled to damages.

*Lara* confirms that no class should have been certified. In *Lara*, the insurer applied a "condition adjustment," which "account[ed] for the difference between the average car owned by a private person and the cars for sale at dealerships." 25 F.4th at 1137. The plaintiffs alleged that "Liberty violates Washington's insurance regulations by not itemizing or explaining this downward 'condition adjustment,' which makes it impossible to verify." *Id.* The court held that individualized questions predominated over common questions. The court reasoned that because

9

the insurer "only owed each putative class member the actual cash value of his or her car, if a putative class member was given that amount or more, then he or she cannot win on the merits." *Id.* at 1139. "But figuring out whether each individual putative class member was harmed would involve an inquiry specific to that person." *Id.* Even if the insurer applied the adjustment, "the district court would have to look into the actual value of the car, to see if there was an injury." *Id.*

The same reasoning applies here. Like the insurance contracts in *Lara*, State Farm's insurance contracts require State Farm to pay ACV. Even if State Farm applied a negotiation adjustment, the district court would still have to determine the car's fair market value to determine ACV. That is an individualized issue with respect to each class member, thus foreclosing class certification.

B.    <u>The panel erred in departing from *Lara*.</u>

In reaching a contrary conclusion, the panel reasoned that the Plaintiffs' "theory is not that State Farm failed to follow the correct procedure for making permissible adjustments, but rather that Washington law does not permit State Farm to apply a discount for typical negotiation *at all*." Op. 18. Thus, "[a]ll members of the negotiation class in this case … received less than they were owed in the exact amount of the impermissible negotiation deduction." *Id.* at 19 (footnote omitted). The panel therefore "conclude[d] that class members could measure their injuries on

10

a class-wide basis by adding back to the value of their vehicles as calculated in the Autosource reports the amount of the unlawful negotiation discount." *Id.*

That reasoning is premised on an error of law: that the regulation, untethered from the contract, is legally enforceable. *If* Washington law authorized Plaintiffs to bring a private cause of action alleging a violation of the regulation—with damages set in the amount of the impermissible adjustment—*then* Plaintiffs' argument might have merit. But Washington law does not create such a private cause of action, and Plaintiffs did not bring such a private cause of action. Instead, Plaintiffs brought a breach of contract claim and associated consumer protection claim premised on State Farm's duty to pay ACV.

The panel offered no response to this dispositive point other than a description of Plaintiffs' argument on this issue, which the panel pointedly declined to endorse: "While these regulations do not themselves create a direct cause of action, Plaintiffs contend they are incorporated into their insurance contracts and that a violation of the insurance regulations also constitutes a violation of the Washington Consumer Protection Act … pursuant to which they are authorized to sue." Op. 6. But the fact that "Plaintiffs contend" something does not make it true. A court may not take the plaintiff's theory of liability at face value; it must *evaluate* that theory to assess whether Rule 23's requirements are satisfied. And Plaintiffs' theory is dead wrong: the contract unambiguously requires a payment of ACV, not of an amount greater

11

than ACV, regardless of whether Plaintiffs establish a regulatory violation. The regulations are not privately enforceable, and Plaintiffs cannot conjure a cause of action by declaring the regulations "incorporated" into the insurance contracts.

As this analysis illustrates, Rule 23 requires a partial analysis of the merits of the plaintiff's claim at the class-certification stage: the Court must evaluate Plaintiffs' "incorporated into the contract" theory at the class certification stage, even though Plaintiffs' merits claim hinges on that theory. That is an inevitable and common feature of class-action litigation. The Supreme Court has repeatedly "emphasized that it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question," and "[s]uch an analysis will frequently entail overlap with the merits of the plaintiff's underlying claim." *Comcast*, 569 U.S. at 33-34 (internal quotation marks omitted). "That is so because the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id.* at 34 (internal quotation marks omitted). That is precisely the case here. The question "would a finding that negotiation adjustments violate Washington law establish State Farm's liability with respect to each class member?"—the relevant inquiry for commonality and predominance under Rule 23—overlaps with the question "did State Farm breach the contract by using a negotiation adjustment?"—the relevant inquiry for

12

liability. But notwithstanding this overlap, the Court must resolve the commonality and predominance questions prior to class certification.

## II. Rehearing En Banc is Warranted.

The Court should grant rehearing en banc. The Court's decision creates intra-circuit and inter-circuit conflicts and will have harmful consequences for class-action litigation in this circuit.

As Judge Rawlinson's dissent explains, the panel opinion cannot be reconciled with *Lara*. The panel held that damages could be calculated on a classwide basis because each class member could be awarded the amount of the negotiation adjustment. But "this approach is … specifically foreclosed by the analysis in *Lara*." Op. at 32-33 (Rawlinson, J., dissenting). In *Lara*, the Court held that an alleged violation of Washington regulations—without an allegation that the insurer paid less than ACV—could not be the basis for certifying a class. *Id.* at 31-33 (Rawlinson, J., dissenting). There is simply no way to reconcile the two cases.

Judge Rawlinson also accurately explains how the panel opinion conflicts with *Sampson v. United Services Automobile Ass'n*, 83 F.4th 414, 422 (5th Cir. 2023). Relying on *Lara*, the Fifth Circuit explained that a class could not be certified when each class member alleges a failure to obtain ACV for a totaled car. Yet here, the Court held that a class *could* be certified when each class member alleges a failure to obtain ACV for a totaled car. Op. at 33-34 (Rawlinson, J., dissenting). As

Judge Rawlinson put it: "The majority's approach is not only contrary to our precedent, but it would also create a circuit split, a circumstance we strive to avoid." *Id.* at 33 (Rawlinson, J., dissenting).

As Judge Rawlinson rightly notes, *id.* at 35 (Rawlinson, J., dissenting), the panel opinion also conflicts with *Bourque v. State Farm Mutual Automobile Insurance Co.*, 89 F.4th 525 (5th Cir. 2023). In *Bourque*, the Fifth Circuit followed *Sampson* and vacated a class-certification order in a case challenging State Farm's use of Autosource—the same software at issue here. *Id.* at 528-29. The panel opinion also conflicts with *Lewis v. Government Employees Insurance Co.*, 98 F.4th 452 (3d Cir. 2024), which reversed a class-certification order where, as here, the plaintiffs alleged a violation of state insurance rules without alleging they received less than ACV. The Third Circuit held that the plaintiffs lacked standing because they could not show they received less than ACV and were uninjured by a bare procedural violation of New Jersey's insurance rules. *Id.* at 460-61. If applied to this case, that reasoning would have similarly precluded class certification.

The resultant intra-circuit and inter-circuit conflicts will cause practical problems. As a result of the intra-circuit conflict, class-action litigation in this circuit will become unpredictable, as district judges strain to choose between two irreconcilable precedents. The inter-circuit conflict will result in forum shopping

and will impose unwarranted burdens on national insurers with standardized contracts.

Further, and even more worrisome, the panel's analysis will affect class-action litigation in this circuit beyond the context of insurance litigation. The panel blessed the Plaintiffs' theory that they could obtain class certification based on the allegation of a bare regulatory violation—even in the teeth of *Lara*, which holds there is no private cause of action to enforce the regulation. The panel appeared to conclude that as long as Plaintiffs presented a *theory* as to how to calculate damages as to all class members, a class could be certified—even if that theory directly conflicts with circuit precedent.

Under the panel's reasoning, enterprising plaintiffs could extend this Court's precedent to manufacture class certification in every single case. They could simply assert that a legal theory exists that would allow the defendant's liability to be adjudicated on a classwide basis—and if the defendant argues that the legal theory is faulty, the plaintiffs could say that this is an issue to be resolved after class certification. Under the panel's reasoning, even plaintiffs without standing could obtain class certification—they could assert an injury-in-fact, and the court could

15

certify a class based on that assertion without assessing whether the injury actually exists.

This outcome would violate the letter and spirit of Rule 23 and would result in serious harm to class-action defendants. Even if a legal theory undermining a class claim appears meritless, class certification is still a pivotal event. "Certification as a class action can coerce the defendant into settling on highly disadvantageous terms, regardless of the merits of the suit." *Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 915 (7th Cir. 2011) (internal quotation marks omitted). "With vanishingly rare exception, class certification sets the litigation on a path toward resolution by way of settlement, not full-fledged testing of the plaintiffs' case by trial." Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 99 (2009).

In the typical case, "extensive discovery and the potential for uncertainty and disruption in a lawsuit allow plaintiffs with weak claims to extort settlements from innocent companies." *Stoneridge Inv. Partners, LLC v. Sci.–Atlanta, Inc.*, 552 U.S. 148, 163 (2008). "Certification of a large class may so increase the defendant's potential damages liability and litigation costs" that even the most surefooted defendant "may find it economically prudent to settle and to abandon a meritorious defense." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 476 (1978), *superseded by rule as stated*, *Microsoft Corp. v. Baker*, 582 U.S. 23 (2017); *accord Coinbase, Inc.*

16

*v. Bielski*, 599 U.S. 736, 743 (2023) ("[T]he possibility of colossal liability can lead to what Judge Friendly called 'blackmail settlements.'" (quoting H. Friendly, *Federal Jurisdiction: A General View* 120 (1973)); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 350 (2011) ("Faced with even a small chance of a devastating loss, defendants will be pressured into settling questionable claims."). This is why "virtually all cases certified as class actions and not dismissed before trial end in settlement." Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical Legal Stud. 811, 812 (2010). Given that reality, the Court should grant rehearing en banc and reaffirm that classes may not be certified based on manifestly faulty legal theories.

## CONCLUSION

The petition for rehearing en banc should be granted.

Dated: October 15, 2024        Respectfully submitted,

                              /s/ Adam G. Unikowsky

Jennifer B. Dickey                    Adam G. Unikowsky
Jonathan D. Urick                     JENNER & BLOCK LLP
U.S. CHAMBER LITIGATION CENTER    1099 New York Ave. NW Suite 900
1615 H Street, NW                    Washington, DC 20001
Washington, DC 20062                (202) 639-6000
                                aunikowsky@jenner.com

Stephen Skardon
AMERICAN PROPERTY CASUALTY
 INSURANCE ASSOCIATION
8700 West Bryn Mawr,
Suite 1200S
Chicago, IL 60631

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the word limit set forth in Ninth Circuit Rule 29-2(c)(2) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this brief contains 3,825 words.

I further certify that this brief complies with the typeface requirements set forth in Federal Rule of Appellate Procedure 32(a)(5)(A) and with the type-style requirements set forth in Federal Rule of Appellate Procedure 32(a)(6).

/s/ Adam G. Unikowsky

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of October, 2024 a true and correct copy

of the foregoing Brief was served via the court's CM/ECF system.


/s/ Adam G. Unikowsky